MICHAEL JAY GREEN        4451
  ~ and ~
BRIAN K. MACKINTOSH      9525
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 521-3336
Facsimile:  (808) 566-0347
michaeljgreen@hawaii.rr.com
bmackphd@gmail.com

Attorneys for Plaintiff
JOHN TOMA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JOHN TOMA,<br><br>                         Plaintiff,<br><br>    vs.<br><br>UNIVERSITY OF HAWAIʻI,<br><br>                         Defendant. | CIVIL NO. 16-00499 KSC<br><br>FIRST AMENDED COMPLAINT;<br>SUMMONS |

## FIRST AMENDED COMPLAINT

Plaintiff JOHN TOMA ("Plaintiff", "Toma"), by and through his attorneys

Michael J. Green and Brian K. Mackintosh, alleges the following allegations and

claims against Defendant UNIVERSITY OF HAWAIʻI ("Defendant", "Defendant

UH"):

1.     This action arises from the deliberate, arbitrary and

discriminatory acts of Defendant UH that violated Plaintiff's rights under Title II

of the American with Disabilities Act of 1990, 42 U.S.C. 12132 ("ADA"), and §

504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, as amended by the American

with Disabilities Amendment Act of 2008 (Pub. Law 110-325).

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over the above Defendant

pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), as the complaint involves questions

of federal law and seeks to recover damages or to secure equitable relief under acts

of Congress providing for the protection of civil rights.

3.     The amount in controversy exceeds $75,000.

4.     Venue of this action lies in the United States District Court for

the District of Hawai`i, pursuant to 28 U.S.C. § 1391, because it is the judicial

district where the claims arose and where the parties reside.

5.     Plaintiff files this First Amended Complaint as a matter of

course pursuant to Federal Rules of Civil Procedure Rule 15(a)(1)(A).

## PARTIES

6.     Plaintiff John Toma resides in the City and County of Honolulu in the

State of Hawai`i.

2

7.      The University of Hawai`i, is an institution of higher learning, divisions of which are the University of Hawai`i at Manoa and the John A. Burns School of Medicine ("JABSOM").  The University of Hawai`i is an instrumentality of the State of Hawaii.

<u>COMMON FACTUAL ALLEGATIONS</u>

8.      JABSOM receives financial assistance from the United States Federal Government.

9.      Toma matriculated as a medical student at JABSOM in July 2005.

10.      Shortly after July 2005, Toma began to experience anxiety, depression, and inabilities to sleep or focus.

11.      Believing that these symptoms were typical for a medical student, Toma delayed seeking medical treatment until July 2007.

12.      Beginning in 2007, Toma was under the psychiatric care of Noelle Yuen, MD, ("Dr. Yuen"), one of JABSOM's recommended mental health professionals.

13.      Toma experienced some academic difficulty as a result of his health problems but was in academic good standing at the beginning of January 2011, prior to his dismissal from JABSOM as a medical student.

14.     On July 27, 2009[1], Toma took the United States Medical Licensing Examination Step 1 (USMLE).

15.     On August 12, 2009, Toma found out that he did not pass the USMLE.

16.     In December 2009, Dr. Yuen clinically diagnosed Toma with major depression pursuant to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV TR) criteria for Major Depressive Episode.

17.     Toma's depression did not respond immediately to treatment.

18.     In August 2010, Dr. Yuen tested Toma for and discovered undiagnosed hypothyroidism.

19.     Toma's depression and hypothyroidism interfered with major life activities such as concentrating, studying and learning.

20.     By January 2011, Toma's major depression and hypothyroidism had begun to respond to treatment.

21.     Toma requested but was denied reasonable accommodations for his disability from the Defendant.

---

[1]    All specific dates mentioned in the First Amended Complaint are understood to mean that the event took place "on or around" that date.

22.     The Defendant created a hostile environment by disparaging and/or refusing to recognize his mental health disability, and denying Toma's multiple requests for reasonable accommodation with bad faith and gross misjudgment.

## DR. MARY ANN ANTONELLI

23.     On October 16, 2009, Dr. Mary Ann Antonelli ("Antonelli"), Director of the Office of Student Affairs (OSA) at JABSOM, asked Toma to appear before the Student Standing and Promotion Committee ("SSPC") so that the SSPC could evaluate his academic progress at JABSOM.

24.     Through an email communication on October 16, 2009, Toma informed Antonelli of his depression and disability.

25.     As the Director of the OSA at JABSOM, Antonelli has the responsibility to:

- Provide support for overall well-being of students;

- Refer students to appropriate resources when necessary;

- Assists students in resolving academic & personal concerns & issues; and,

- Refer students to JABSOM or community resources when appropriate.

26.     Antonelli did not refer Toma to the University of Hawai`i at Manoa office for students with disabilities ("the Kokua Program").

27.    Rather than referring Toma to the Kokua Program, Antonelli exercised her authority to accommodate Toma's health and disability status by twice postponing Toma's appearance before the SSPC in November and December of 2009.

28.    In a fact-finding interview conducted by the University of Hawai`i at Manoa, Office of Judicial Affairs ("OJA-Manoa") on April 26, 2012, Antonelli stated that she typically called the Kokua Program staff regarding students with physical disabilities.  She did not refer Toma to the Kokua Program nor did she call upon them for assistance in this case.  Antonelli stated that, "[she] didn't think to send him for psychiatric reasons."

29.    Toma appeared before the SSPC on February 10, 2010.

30.    The SSPC allowed him to take the USMLE by April 28, 2010 as an accommodation for his medical disability.

31.    In April of 2010, Dr. Yuen, advised Toma to take a medical leave of absence for health reasons and to not take the USMLE by the April 28, 2010 deadline.

32.    Dr. Yuen wrote a letter to JABSOM on June 7, 2010 stating that as Toma's psychiatrist, she recommended a 4-6 month leave of absence to accommodate Toma's depression.

33.     Dr. Antonelli approved a medical leave of absence for Toma on June 23, 2010, due to Toma having been diagnosed with major depression.  In this last communication with Toma, Dr. Antonelli told him to "Rest up."

34.     On September 30, 2010, Dr. Antonelli retired from JABSOM.

35.     Antonelli recognized and provided accommodations for Toma's mental health disability but treated him differently than she would have treated a disabled person with a physical disability.

## DR. RICHARD SMERZ AND THE SSPC

36.     Dr. Richard Smerz ("Smerz") replaced Antonelli as Director of the OSA at JABSOM on November 1, 2010.

37.     On December 1, 2010, Smerz ordered Toma to attend an SSPC meeting scheduled for January 12, 2011.

38.     On January 5, 2011, Toma met with Dr. Smerz and provided information of his medical disabilities, including depression that was already well known to JABSOM and recently diagnosed hypothyrodism.

39.     Toma informed Dr. Smerz on January 5, 2011, that his depression and hypothyroidism had begun to respond to treatment.  Toma asked that Dr. Smerz continue the medical leave granted by Antonelli in order to allow time for his treatment to become fully effective.

40.     Smerz refused to further accommodate Toma's disabilities and encouraged Toma to voluntarily withdraw from JABSOM or face almost certain expulsion from JABSOM as a result of the SSPC meeting scheduled for January 12, 2011.

41.     Smerz told Toma that he needed to "learn to cope with [his] problems."

42.     Toma was shocked when Smerz told him this, and found the comment very insensitive and discriminatory.

43.     Smerz did not recommend or mention to Toma that he should contact the Kokua program to certify his disability.

44.     Dr. Yuen contacted Smerz before the SSPC meeting to ask for continuing accommodation of Toma's disability to allow time for Toma's treatment to become fully effective.

45.     Smerz refused Dr. Yuen's request.

46.     On January 12, 2011, the SSPC met for less than 10-minutes to review Toma's case.

47.     The SSPC knew that Antonelli had placed Toma on medical leave upon the recommendation of his physician.

//

//

48.     The SSPC did not make further inquiries into the state of his health or ask how the SSPC or JABSOM could further accommodate Toma to achieve academic success.

49.     The SSPC seemed completely disinterested in Toma's depression, hypothyroidism, or prognosis.

50.     On January 12, 2011, the SSPC voted unanimously to dismiss Toma from JABSOM for academic malperformance.

51.     At the time of the vote, JABSOM personnel had been on notice of Toma's depression for over one-year.

52.     In a fact-finding interview conducted on April 5, 2012, by OJA-Manoa, Smerz stated that if Mr. Toma had taken the USMLE a second time and passed, chances are, he might have remained as a student.

53.     Toma was prevented from taking the USMLE Step 1 a second time because Smerz ignored Toma's and Toma's physician's reasonable request for time to allow his treatment for depression and recently-diagnosed hypothyroidism to become effective.

54.     During the April 5, 2012 interview with OJA-Manoa, Smerz reiterated his belief that effective accommodation for depression and hypothyroidism would be for Toma to "learn to cope."

55.     By information and belief, Smerz does not believe that depression qualifies as a disability on the same level as other disabilities do, or else he would not have recommended "coping" as a reasonable accommodation.

56.     During the April 5, 2012 interview, Smerz stated that the SSPC unanimously felt that hypothyroidism did not play a significant role in Toma's inability to perform.

57.     By information and belief, the SSPC and Smerz believed they could diagnose Toma's disability better than Toma's treating psychiatrist could and rejected the recommendation of Toma's treating psychiatrist.

58.     Smerz and the SSPC discriminated against Toma because of his mental-health disability.

59.     Because of the discrimination by Smerz and the SSPC, Toma failed to receive the appropriate accommodations required for his disability and was treated differently than a student who had a physical disability of similar magnitude.

60.     Smerz and the SSPC acted in bad faith and with gross misjudgment when addressing Toma's disability and requests for accommodation.

## THE ACADEMIC APPEALS COMMITTEE

61.     On January 24, 2011, Toma appealed the SSPC's decision to the Academic Appeals Committee ("AAC").

62.     The JABSOM Academic Appeals Policy states, "The presentation of an appeal to the AAC is a request by the grievant for a hearing. However, should the AAC decide (by simple majority vote of all voting members) on the basis of all material before it that no reasonable case exists, it has the right to refuse the hearing request."

63.     On January 27, 2011, Dr. Yuen wrote a letter to Andrew Nichols and other members of the Academic Appeals committee.  In the letter, Dr. Yuen stated,

> John Toma had initially come under my professional care for the treatment of major depression and test taking anxiety. Over the past year, in the course of treating his depression, he exhibited symptoms of hypothyroidism and was found to have borderline low thyroid function. This exacerbated the depression and affected his energy, motivation, concentration and cognitive clarity.  It appears that **the dysfunction over the past year and lack of ability to achieve the goals set by the SSPC were attributed, in large part, to the depression and hypothyroidism.** [Emphasis added].

64.     On February 18, 2011, the AAC dismissed Toma's appeal, concluding "there are no grounds for a formal hearing at this time."

65.     Despite a letter from Toma's treating psychiatrist stating that Toma's inability to take the USMLE resulted from a disability that had now been corrected, the AAC concluded that "on the basis of all material before it that no reasonable case exists."

66.    The AAC evidenced active discrimination against Toma for his mental health disability by dismissing his case without a hearing and ignoring Toma's psychiatrist that his diagnosed mental health disability caused his academic struggles.

67.    The AAC would not have discriminated against Toma had he had a physical disability of similar magnitude and asked for the same accommodation.

68.    The AAC acted in bad faith and with gross misjudgment by failing to acknowledge Toma's disability and refusing Toma's request for accommodation.

### DR. JERRIS HEDGES, DEAN, OFFICE OF THE DEAN OF MEDICINE, JABSOM

69.    On March 1, 2011, Toma appealed the AAC's decision to Dr. Jerris Hedges, Dean, Office of the Dean of Medicine, JABSOM ("Hedges").

70.    Toma included copies of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Americans Disabilities Act of 1990 ("ADA"), and JABSOM's policy on non-discrimination.

71.    In a written statement to Hedges, Toma explained that in February 2010, the SSPC had granted Toma permission to retake the USMLE by the end of April 2010.

72.     Toma was unable to take the exam due to his disability, which included major depression, anxiety, lethargy, insomnia, concentration and focus problems, and undiagnosed hypothyroidism.

73.     Toma notified Hedges that Toma's treating physician, Dr. Yuen, advised him to discontinue his studies in order to focus on his recovery.

74.     Toma also informed Hedges that Dr. Yuen had diagnosed Toma with hypothyroidism in August 2010 and that Toma's symptoms had significantly improved since beginning treatment.

75.     Toma requested that the school provide reasonable accommodations by allowing him to take the USMLE and emphasized that providing this reasonable accommodation would not impose undue hardship or lower the standards of the school.

76.     On April 6, 2011, Hedges and Smerz met with Toma to discuss Toma's appeal.  Toma reiterated his request for reasonable accommodations under Section 504 and the ADA and reemphasized that providing this reasonable accommodation would not impose undue hardship or lower the standards of the school.  Toma asserted his well-documented mental-health disability several times, but Hedges and Smerz refused to acknowledge it.  Toma found the meeting very frustrating and felt discriminated by Hedges and Smerz when they refused to acknowledge his mental-health disability.

77.     On April 7, 2011, Toma received a letter from Hedges upholding the SSPC's decision to dismiss Toma from JABSOM.

78.     The April 7, 2011, letter did not acknowledge or mention Toma's mental-health disability or acknowledge his request for reasonable accommodations under Section 504 or the ADA.

79.     In a letter to OJA-Manoa with regards to Toma's case dated May 21, 2012, Hedges further displayed his dismissive and discriminatory attitude by stating:

> I am now in receipt of the note from John Toma's physician note dated January 11, 2010. This note indicates that the treating physician **believed** that Mr. Toma was recovering from a diagnosis of major depression and that Mr. Toma's condition might be aggravated by stress associated with a follow-up assessment by the Student Standing and Promotion Committee (SSPC). There is no mention in this note of a thyroid condition. [emphasis added]

80.     In the May 21, 2012, letter, Hedges demonstrates his refusal to accept the independent and objective diagnosis of Toma's treating physician.  Dr. Yuen did not, **believe** "Mr. Toma was recovering from a diagnosis of major depression."  Dr. Yuen had **diagnosed** Toma with major depression and further concluded that Mr. Toma was recovering.  Hedges had no basis, clinical or otherwise, by which he could challenge Dr. Yuen's diagnosis or evaluation.

81.     Dean Hedges also writes, "there is no mention in this note of a thyroid condition."

14

82.    Dr. Yuen's note is dated January 11, 2010.  Dr. Yuen did not diagnose Toma's hypothyroidism until August 2010.

83.    Hedges' letter continues, "Indeed, when the School was notified of a borderline low thyroid hormone level, it was not stated by the treating physician that the borderline low level was a trigger for his depressive symptoms. As noted before, it is immaterial whether or not Mr. Toma may have had a borderline low thyroid hormone level."

84.    In fact, Dr. Yuen's letter stated "[Toma's] dysfunction over the past year and lack of ability to achieve the goals set by the SSPC were attributed, in large part, to the depression and hypothyroidism."

85.    Contrary to what Hedges asserts, Toma did not just exhibit "depressive symptoms."  Dr. Yuen *diagnosed* Toma with major depression following the guidelines DSM-IV TR criteria for Major Depressive Episode.

86.    It is not "immaterial" whether or not Toma "may have had" a borderline low thyroid hormone level.

87.    Toma was **diagnosed** with borderline low thyroid hormone level that, in the opinion of his treating physician, "the dysfunction over the past year and lack of ability to achieve the goals set by the SSPC were attributed, in large part, to the depression and **hypothyroidism**."  [Emphasis added].

15

88.     Toma found Hedges' dismissal of his disability upsetting, insensitive, and discriminatory.

89.     Hedges further argued in his May 21, 2012 letter that he was not required to provide accommodations for Toma's disability because alerting the Directors of the OSA at JABSOM (Drs. Antonelli and Smerz), the SSPC, the AAC, and the Dean of the Medical School about his long-lasting major depression and hypthoroidism "does not specifically provide the University with notice of a disability that falls under the protection of the ADA and state disability law."

90.     Hedges concluded the May 21, 2012 letter by stating, "Although re-emerging Mr. Toma into the School of Medicine would undoubtably re-expose him to many of the stressful factors that appear to have contributed to his inability to progress satisfactorily, it is the performance of the student, not any underlying diagnosis, which must guide decision making by the SSPC."

91.     By stating that, "it is the performance of the student, not any underlying diagnosis, which must guide decision making by the SSPC," Dean Hedges places the SSPC and other decision-making bodies above the laws intended to protect persons with disabilities.

92.     It is **precisely** the diagnosis, and the reasonable accommodations that the school can provide under Section 504 and the ADA, that must concern the SSPC and all other decision makers at the University.

93.     Hedges continued demonstrating his insensitive, hurtful, and discriminatory attitude in his fact-finding interview by OJA-Manoa on April 9, 2012.

94.     During the interview, Hedges acknowledged, "that Mr. Toma had anxiety and depression in relation to his studies.  Dean Hedges said that efforts were made to help and encourage Mr. Toma; **however, he felt that Mr. Toma had to take actions to help himself**.  Dr. Hedges said that for example, Mr. Toma must get adequate rest and exercise and follow through with medical and psychological assessments."

95.     Hedges exhibits classic "blame-the-victim" discrimination for Toma's psychiatric disability.

96.     Hedges continued in the interview by stating, "regardless of what came first, from a medical perspective, if he were to have first advised Mr. Toma, he would have advised him to obtain objective medical help and get his personal life in order."

97.     This comment reveals that Hedges never fully trusted the diagnosis of Dr. Yuen or provided Toma with "objective medical help," despite Dr. Yuen's superior access to Toma and Dr. Yuen being a psychiatric provider approved by JABSOM.

17

98.     Hedges goes on to reveal that he feels that he, himself, is in a better position to diagnose Toma than Toma's own treating physician:

> Dr. Hedges stated that Dr. Noelle Yuen confirmed Mr. Toma had a borderline low thyroid hormone level.  Dr. Hedges said that a hypothyroid condition could cause Mr. Toma to experience low energy, fatigue, tiredness, and weight gain.  However, Dr. Hedges stated that Mr. Toma's thyroid level was apparently not at the level he would usually see such symptoms.  Dr. Hedges said that Mr. Toma's low energy level might have been caused by his depression.  However, Dr. Hedges said that it is hard to say, without looking at Mr. Toma's medical record, whether or not he had a clinically significant degree of hypothyroidism. In reference to Mr. Toma's low energy level, inability to get out of bed, and lack of response to email and mail, Dr. Hedges stated that a mildly low thyroid level alone would not likely cause these symptoms.  Dr. Hedges said that with medication, Mr. Toma should have been better by the time he met with him in April 2011.

99.     Hedges does not need to opine whether "Toma's low energy level might have been caused by his depression."  Nor does he need to "look[] at Mr. Toma's medical record."  Mr. Toma's treating psychiatrist, Dr. Yuen, had already done that and provided medical documentation of Toma's psychiatric disability and the accommodations that JABSOM could take in order to accommodate them.

100.   When asked about Toma's psychiatric disability, Hedges confesses, "Dr. Hedges asked rhetorically, 'Does this rise to the level of disability?'  Dr. Hedges then stated, 'I don't know.'"

101.   If Hedges doesn't know if Toma's illness amounts to a disability, and acts on that ignorance, Hedges demonstrates deliberate and callous disregard, disrespect, and discrimination towards Toma's disability.

102.   Hedges would not have discriminated against Toma, attempted his armchair diagnoses, nor treated him with such callous discrimination, if Toma had a physical disability of similar magnitude and asked for the same accommodation.

103.   Hedges acted in bad faith and with gross misjudgment when addressing Toma's disability and requests for accommodation.

## DIRECTOR ANN ITO, DIRECTOR OF THE KOKUA PROGRAM

104.   On December 16, 2011, Toma filed two "A9.920" Discrimination Complaints ("Discrimination Complaint") with the Office of the Vice Chancellor for Students at the University of Hawai`i at Manoa.  One Discrimination Complaint was against Hedges, the other was against Smerz.

105.   The OJA-Manoa investigation team tasked with providing a fact-finding report produced that report on to the Office of the Chancellor at the University of Hawai`i at Manoa on May 21, 2012 ("Fact Finders' Report").

106.   On April 9, 2012, the investigation team interviewed Ann Ito, Director of the University of Hawai`i's Kokua Program ("Director Ito").

107.    Director Ito stated in the interview that she exclusively handles all requests related to disability accommodations for students at JABSOM in order to insure that all JABSOM students are treated similarly.

108.    Director Ito explained that insomnia and anxiety could be considered disabilities, but this determination depends on the impact the condition has on the individual.  Ito stated that test-taking anxiety is not considered a disability.  Director Ito said, "An individual would have to experience more of a generalized anxiety, especially of a greater magnitude."  In addition, Director Ito stated that clinical or major depression is indeed considered a disability and accommodations could include "petitioning for late withdrawal, either partially or completely, or being provided with a separate test taking area or time extension." Director Ito said that accommodations could also include utilizing note-takers for certain classes, as medication might get in the way of a student's focus.  Director Ito stated, "Other accommodations could include extended leave from a program or extensions for the student to complete their degree or for PhD students, their dissertation."  Director Ito said that students need to provide medical documentation for their clinical or major depression and the condition must persist for six months or more to be considered a disability.

109.    In relation to Toma's particular case, Director Ito stated, that if someone from JABSOM had contacted her earlier about Mr. Toma's case, she would have reviewed the documentation provided.

110.    Director Ito said that she probably would have recommended another leave of absence to provide Mr. Toma with an opportunity to stabilize under Dr. Yuen's care.

REED DASENBROCK,<br/>
<u>VICE CHANCELLOR FOR ACADEMIC AFFAIRS, UH MANOA</u>

111.    Reed Dasenbrock, Vice Chancellor for Academic Affairs, UH Manoa, ("Dasenbrock") acted as the Decision Maker for the Fact Finders' Report.

112.    On June 20, 2012, Dasenbrock issued his decision regarding Toma's discrimination claims against Hedges and Smerz.

113.    In his decision, Dasenbrock systematically mischaracterizes the record and omits facts supporting Toma's claims.

114.    Dasenbrock omitted the fact that all of Toma's academic discrepancies were satisfied by the standards set by JABSOM.

115.    With the omission of this key fact, Dasenbrock implies that Toma was not a qualified candidate to take the USMLE.

116.    Toma was in good academic standing and qualified to take the USMLE, which he would have done but for his well-documented disability.

117.   Dasenbrock manipulated the facts when he states, "After you failed the USMLE Step 1 exam in July 2009, you did not return to the SSPC to discuss you[r] academic performance and status in the curriculum until January 2011…"

118.   It is well evidenced that between July 2009 to January 2011, Toma's treating physician and/or Toma had notified JABSOM on six occasions within a period of 15 months in regards to his disability.

119.   Dasenbrock omits testimony from the UH-Manoa Fact-Finder's Report that Dr. Antonelli, Dr. Smerz, and Dean Hedges had knowledge of Toma's major depression.

120.   Dasenbrock mischaracterizes the record by stating that Toma "sporadically" mentioned to Dr. Antonelli that Toma was experiencing depression and anxiety.

121.   Toma provided JABSOM administrators and personnel NINE notices of Toma's disability in a span of 18 months, beginning from October 2009 through April 2011.

122.   The fact that the Dasenbrock describes Toma's communications with Antonelli as "sporadically mentioned" is factually wrong and discriminatory in nature.

123.   Toma provided Antonelli with written confirmation of his depression in October 2009, verified by his treating physician in December 2009 when his physician spoke to Dr. Antonelli; and in January 2010, when Antonelli collaborated when Toma's treating physician to provide documentation to JABSOM.

124.   Dasenbrock's decision deliberately, in bad faith, and with gross misjudgment omits the testimony by Director Ito that supports Toma's claims for disability.

125.   On July 8, 2012, Toma requested copies of the Fact Finders' Report from OJA-Manoa to facilitate his appeal to the Chancellor.

126.    The OJA-Manoa informed Toma that Dasenbrock had the Fact Finders' Report.

127.   On July 9, 2012, Toma requested the Fact Finder's Report from Dasenbrock.

128.   Toma received NO response from the Dasenbrock's office.

129.    Toma submitted additional requests for the Fact Finders' Report on July 18, 2012 and July 19, 2012, with copies of the request sent to UH-Manoa's Office of General Counsel and UH-Manoa Chancellor Tom Apple's office.

130.   Toma did not receive any response.

131.   On July 20, 2012, the deadline, Toma submitted his appeal of Dasenbrock's decision to the Chancellor's Office without the benefit of the Fact Finders' Report.

132.   On July 21, 2012, Toma received an abridged and edited copy of the UH-Manoa's Fact-Finder's Report.

133.   Dasenbrock's discriminated against Toma and exhibited bad faith and gross misjudgment by interfering with Toma's right to appeal and by refusing to provide essential documents for that appeal.

### VASSILIS SYRMOS, ASSOCIATE VICE CHANCELLOR FOR RESEARCH AND GRADUATE EDUCATION, ACTING AS THE CHANCELLOR'S DESIGNEE

134.   Toma appealed Dasenbrock's decision to Vassilis Syrmos, Associate Vice Chancellor for Research and Graduate Education, acting as the Chancellor's Designee ("Syrmos").

135.   Syrmos reviewed Toma's appeal under the standard set forth in Administrative Procedure A9.920.  Under Administrative Procedure A9.920 9.b.3, "[t]he standard of review for an appeal of a cause or no cause finding is whether the finding is against the clear weight of the evidence in the record of the case."

136.   On September 11, 2012, Syrmos issued his decision regarding Toma's appeal ("Syrmos' Decision").

137.   The Fact Finders' Report was the record of the case.

138.    Syrmos exhibits bad faith and gross misjudgment by making no reference to the Fact Finders' Report when considering Toma's appeal.

139.    In Syrmos' Decision, Syrmos exhibited bad faith and gross misjudgment by refusing to consider the facts in the record of the case that favored Toma.

140.    Syrmos exhibits bad faith and gross misjudgment in denying that JABSOM had notice of Toma's disability, when Antonelli had accepted notice of Toma's disability and provided preliminary accommodations for it.

141.    Syrmos exhibits bad faith and gross misjudgment by not acknowledging that Toma provided notice nine times over 18-months of his major depression and/or hypothyroidism.

142.    Syrmos knew or should have known that a diagnosis of major depression and/or hypothyroidism that requires an academic leave of absence greater than six months qualifies as a disability.

143.    By refusing to acknowledge the notice provided to JABSOM, Syrmos discriminated against Toma because of his disability and violated his rights as a disabled person.

## THE UNIVERSITY OF HAWAI'I AT MANOA

144.    Depression is largely invisible and often misunderstood, even by trained health professionals.

145.   The personnel at the University of Hawaii at Manoa created a hostile environment for Toma by:

- Not referring him to the Kokua program when they would have referred similarly situated, physically disabled students;

- Second guessing the diagnosis of his treating physician;

- Stating to Toma and the fact finders that he needed to "learn to cope";

- Misconstruing the number and adequacy of the notices of his disability that Toma provided;

- Interfering with his right to appeal; and

- Deliberately ignoring the record on appeal.

146.   The University of Hawai`i at Manoa interfered with Toma's fundamental right to an education by creating a hostile environment through which he had to navigate.

## COUNT I
## REHABILITATION ACT OF 1973 (AS AMENDED)

147.   Plaintiff repeats and realleges all of the foregoing allegations.

148.   Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, prohibits discrimination on the basis of disability in programs or activities receiving federal financial assistance from the United States of America, including the United States Department of Education.

149.   Defendant, the University of Hawai`i, is a program or activity that, at the times relevant hereto, was in receipt of federal financial assistance,

including but not limited to, federal financial assistance from the Department of Education.

150.   At the times relevant hereto, Plaintiff was a qualified student with a disability as defined under the Rehabilitation Act of 1973 and the Americans with Disability Act, and the Defendant was required to make such academic adjustments to its academic requirements as were necessary to ensure that it did not discriminate on the basis of disability against Plaintiff.

151.   The Defendant failed to make such academic adjustments and otherwise discriminated against Plaintiff, by creating a hostile environment on account of his disability.

152.   The Defendant was in receipt of actual and constructive notice that Plaintiff, as one experiencing major depression, would need accommodation.

## COUNT II
## AMERICANS WITH DISABILITIES ACT OF 1990 (AS AMENDED)

153.   The Plaintiff repeats and realleges the allegations set forth above.'  The Defendant is subject to the Americans with Disabilities Act of 1990 (as amended).

154.   Defendant created a hostile environment because of his disability, in wilful violation of the Americans with Disabilities Act of 1990 (as amended).

<u>PRAYER FOR RELIEF</u>

WHEREFORE the Plaintiff respectfully requests that the Court issues judgment for the Plaintiff as follows:

A.      Enjoining Defendant and its respective officers, successors, assigns, employees, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race, color, national original, or disability;

B.      Enjoining Defendant to reinstate Plaintiff as a student in the M.D. Degree Program, to restore all credits and status as a student in good standing; to provide whatever remedial education Plaintiff requires as a result of his absence from the M.D. Program;

C.      Awarding compensatory and punitive damages to the extent permitted but in an amount not less than Five Million Dollars;

D.      Awarding Plaintiff his reasonable attorneys fees and costs;

E.      Awarding such other relief as is appropriate and equitable.

DATED:  Honolulu, Hawai`i, October 4, 2016.

/s/ *Brian K. Mackintosh*
MICHAEL J. GREEN
BRIAN K. MACKINTOSH
Attorneys for Plaintiff
JOHN TOMA