IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN TOMA, | ) CIVIL NO. 16-00499 RLP |
| Plaintiff, | ) MEMORANDUM OPINION AND ORDER ) GRANTING DEFENDANT'S MOTION FOR |
| vs. | ) JUDGMENT ON THE PLEADINGS WITH ) LEAVE TO AMEND |
| UNIVERSITY OF HAWAII, | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

On October 20, 2017, a hearing was held on Defendant's Motion for Judgment on the Pleadings, filed on August 16, 2017 ("Motion"). ECF No. 24. Brian K. Mackintosh, Esq. appeared on behalf of Plaintiff; Derek T. Mayeshiro, Esq. appeared on behalf of Defendant. After carefully reviewing the parties' submissions, the arguments made by counsel at the hearing, and the relevant legal authority, the Court GRANTS the Motion and GRANTS Plaintiff leave to file a second amended complaint.

BACKGROUND

In his First Amended Complaint, Plaintiff alleges that he matriculated as a medical student at the John A. Burns School of Medicine, University of Hawaii at Manoa, in July 2005. ECF No. 7 ¶ 9. Shortly after July 2005, Plaintiff began to experience anxiety, depression, and inabilities to sleep or focus. Id. ¶ 10. Plaintiff did not seek medical treatment for these symptoms until July 2007. Id. ¶ 11. Beginning in 2007,

Plaintiff was under psychiatric care. Id. ¶ 12.

Plaintiff took a medical licencing exam in July 2009 and did not pass. Id. ¶¶ 14, 15. In October 2009, Dr. Mary Ann Antonelli, Director of the Office of Student Affairs at the medical school, asked Plaintiff to appear before the Student Standing and Promotion Committee to evaluate his academic progress. Id. ¶ 23. In response, Plaintiff emailed Dr. Antonelli about his depression and disability. Id. ¶ 24. Dr. Antonelli did not refer Plaintiff to the office for students with disabilities, but accommodated Plaintiff by twice postponing Plaintiff's appearance before the committee. Id. ¶¶ 26-27.

In December 2009, Plaintiff was clinically diagnosed with major depression pursuant to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV TR) criteria for Major Depressive Episode. Id. ¶ 16. Plaintiff did not respond immediately to treatment. Id. ¶ 17.

Plaintiff appeared before the Student Standing and Promotion Committee on February 10, 2010. Id. ¶ 29. The committee allowed Plaintiff to re-take the medical licencing exam by April 28, 2010, to accommodate his disability. Id. ¶ 30. In April 2010, Plaintiff's treating psychiatrist advised Plaintiff to take a medical leave of absence from school and not to take the medical licencing exam. Id. ¶ 31. Plaintiff's treating psychiatrist wrote a letter to the medical school on June 7,

2010, stating that she recommended a 4-6 month leave of absence to accommodate Plaintiff's depression. Id. ¶ 32. Dr. Antonelli approved Plaintiff's medical leave of absence on June 23, 2010. Id. ¶ 33.

In August 2010, Plaintiff was diagnosed with hypothyroidism. Id. ¶ 18. Plaintiff's depression and hypothyroidism interfered with major life activities such as concentrating, studying, and learning. Id. ¶ 19.

On December 20, 2010, the new Director of the Office of Student Affairs at the medical school, Dr. Richard Smerz, ordered Plaintiff to attend a meeting before the Student Standing and Promotion Committee to evaluate his academic progress on January 12, 2011. Id. ¶ 37. Plaintiff met with Dr. Smerz on January 5, 2011, and informed him of his medical disabilities, including depression and recently diagnosed hypothyroidism. Id. ¶ 38. Plaintiff's major depression and hypothyroidism had begun to respond to treatment by January 2011. Id. ¶¶ 20, 39. Plaintiff asked Dr. Smerz to continue Plaintiff's medical leave to allow time for his treatment to become fully effective, which Dr. Smerz refused. Id. ¶¶ 39, 40. Dr. Smerz encouraged Plaintiff to withdraw from medical school or face almost certain expulsion. Id. ¶ 40. Dr. Smerz also told Plaintiff that he needed to leave to cope with his problems. Id. ¶ 41. Dr. Smerz did not recommend or contact the office for students with disabilities.

3

Id. ¶ 43.  Plaintiff's treating psychiatrist also contacted Dr. Smerz to ask that Plaintiff be given continuing accommodation to allow time for his treatment to become fully effective, which Dr. Smerz refused.  Id. ¶¶ 44-45.

The Student Standing and Promotion Committee met on January 12, 2011, to review Plaintiff's case and voted unanimously to dismiss Plaintiff from the medical school for academic malperformance.  Id. ¶¶ 46-50.

Plaintiff appealed the committee's decision on January 24, 2011.  Id. ¶ 61.  Plaintiff's treating psychiatrist submitted a letter regarding Plaintiff's depression and hypothroidism stating that these conditions "affected his energy, motivation, concentration and cognitive clarity."  Id. ¶ 63.  Plaintiff's appeal was dismissed on February 18, 2011, concluding that there were no grounds for a formal hearing.  Id. ¶ 34.  Plaintiff appealed that decision to Dr. Jerris Hedges, Office of the Dean of Medicine, asking permission to re-take the licencing exam as an accommodation for his depression and hypothyroidism.  Id. ¶ 69-75.  Plaintiff met with Dr. Hedges regarding his appeal on April 6, 2011.  Id. ¶ 76.  Plaintiff received a letter from Dr. Hedges on April 7, 2011, upholding the decision to dismiss Plaintiff from the medical school.  Id. ¶ 77.

In December 2011, Plaintiff filed discrimination complaints against Dr. Hedges and Dr. Smerz with the Office of

4

the Vice Chancellor for Students.  Id. ¶ 104.  A fact-finding report regarding Plaintiff's complaints was submitted to the Office of the Vice Chancellor for Students on May 21, 2012.  Id. ¶ 105.  On June 20, 2012, Reed Dasenbrock, Vice Chancellor for Academic Affairs, issued his decision finding no discrimination.  Id. ¶¶ 112-130.  Plaintiff appealed that decision to Vassilis Syrmos, Associate Vice Chancellor for Research and Graduate Education, acting as the Chancellor's designee on July 21, 2012.  Id. ¶¶ 131, 134.  Plaintiff's appeal was denied on September 11, 2012.  Id. ¶¶ 136-143.

Plaintiff filed this action on September 11, 2016.  See ECF No. 1.  Plaintiff asserts claims under Section 504 of the Rehabilitation Act of 1973, as amended, and under Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended.  ECF No. 7 ¶¶ 1, 147-154.

DISCUSSION

Under Rule 12(c), either party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  The standard for a motion for judgment on the pleadings is essentially the same as a motion to dismiss under Rule 12(b)(6).  Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262-63 (D. Haw. 2003) (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989)).  The motion will be granted if, accepting as true all material allegations contained in the nonmoving party's

5

pleadings, the moving party is entitled to judgment as a matter of law.  Torbet v. United Airlines, Inc., 298 F.3d 1087, 1089 (9th Cir. 2002).  In the present Motion, Defendant argues that it is entitled to judgment on the pleadings because Plaintiff's claims are time barred by the applicable statute of limitations. ECF No. 24-1.

In order for the Court to determine whether Plaintiff's claims are time barred, the Court must first determine the applicable statutes of limitations for Plaintiff's Rehabilitation Act and ADA claims.  Like many federal statutes, neither the Rehabilitation Act nor the ADA contains an express statute of limitations.  See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 869 (9th Cir. 2014); Sharkey v. O'Neal, 778 F.3d 767, 770 (9th Cir. 2015).  Before 1990, federal courts generally borrowed the statute of limitations provided by the analogous state law.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78 (2004).  However, in 1990, Congress passed 28 U.S.C. § 1658, which provides a "catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990."  Id. at 371; Sharkey, 778 F.3d at 770; 28 U.S.C. § 1658.  Although both the Rehabilitation Act and the ADA were enacted before this date, the Supreme Court has held that Section 1658's statute of limitations also applies to claims brought under amendments to existing statutes if "the plaintiff's

claim against the defendant was made possible by a post-1990 enactment." Id. at 382; Sharkey, 778 F.3d at 770. The ADA and the Rehabilitation Act were amended by the ADA Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009. Accordingly, to determine the appropriate statute of limitations period, the Court must consider whether Plaintiff's claims were "made possible" by the ADAAA. See Jones, 541 U.S. at 382. In other words, the Court must decide whether Plaintiff has alleged claims under the ADA and Rehabilitation Act as originally enacted or whether Plaintiff's claims "necessarily depend" on the amendments enacted by the ADAAA. See id. at 384.

Defendant asserts that Plaintiff's claims could have been brought under the original Rehabilitation Act and ADA and therefore, the applicable statute of limitations is the two-year statute of limitations in Hawaii Revised Statutes Section 657-7, which bars all of Plaintiff's claims because they occurred before 2012. ECF Nos. 24, 33. Plaintiff asserts that his claims were made possible by the ADAAA, and therefore Section 1658's four-year statute of limitations applies and this action is not time barred because it was filed on September 11, 2016, exactly four years after the last decision upholding his dismissal from medical school. ECF No. 32.

**A. Plaintiff's Claims Could Have Been Brought Under the ADA and the Rehabilitation Act and Were Not "Made Possible"**

7

**by the ADAAA.**

In order to establish a violation of Title II of the ADA, a plaintiff must show that: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)). To establish a claim under Section 504 of the Rehabilitation Act, a plaintiff must establish the same elements as above and must also show that "the program receives federal financial assistance." Id. (quoting Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001)).

The element at issue is whether Plaintiff qualifies as an individual with a disability. Under the ADA, a disability was defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." ADA § 3(2)(A). The ADA did not define "physical or mental impairment," "substantially limits," or "major life activities." See id. In two key cases, the Supreme Court

8

provided guidance regarding how to interpret these terms. In <u>Sutton v. United Air Lines, Inc.</u>, the Supreme Court held that "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." 527 U.S. 471, 483 (1999). In <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, the Supreme Court held that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." 534 U.S. 184, 198 (2002).

Congress expressly rejected these two cases in passing the ADAAA and revised the definition of "disability" for both the ADA and the Rehabilitation Act. See 42 U.S.C. § 12101(a)(4)-(7); 42 U.S.C. § 12102(4). Specifically, the ADAAA provides that "[a]n impairment that is episodic . . . is a disability if it would substantially limit a major life activity when active," and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(D), (E)(i)(I).

Here, Plaintiff argues that his claims were only made possible by the ADAAA. See ECF No. 32 at 14-15. Specifically,

Plaintiff contends that the "episodic nature of [Plaintiff's] depression, his contextual depression, and his depression's response to treatment all would have barred him from making a claim under the original ADA."  Id. at 6, 14-15.  The Court disagrees.  Accepting the allegations of the Complaint as true, the Court finds that Plaintiff's claims were not "made possible" by the ADAAA.

      First, Plaintiff contends that the "episodic" and "contextual" nature of his depression would have barred him from making a claim under the ADA.  ECF No. 32 at 15-19.  As noted above, under the Supreme Court's decision in Toyota, courts were to consider whether the impairment was "long term" in determining whether it was a disability under the ADA.  534 U.S. at 198.  The Court rejects Plaintiff's argument because there are no allegations that his depression was episodic or contextual in nature in his First Amended Complaint.  In his Opposition, Plaintiff states that he "experienced episodic depression."  ECF No. 32 at 14-15.  However, the First Amended Complaint, upon which the Court must rely in deciding the present Motion, does not contain any allegations that Plaintiff's depression was episodic.  According to the First Amended Complaint, Plaintiff began experiencing anxiety, depression, and inabilities to sleep or focus in 2005, sought medical treatment for these conditions in 2007, and was under continued psychiatric care since 2007.

ECF No. 7 ¶¶ 10, 11, 12.  Plaintiff alleges that he was clinically diagnosed in December 2009 with major depression and was treated for major depression and hypothyroidism throughout 2010.  Id. ¶¶ 16, 63.  When Plaintiff requested accommodations from the medical school in January 2011, he had been experiencing symptoms for nearly six years and had been under the care of a psychiatrist for at least four years.  Id.  Based on the allegations in the First Amended Complaint, Plaintiff's impairments were long term and were not episodic or conditional.

The Court recognizes that the Ninth Circuit has held that psychological impairments that lasted for only a short time were not of sufficient duration to qualify as a disability under the ADA.  See Sanders v. Arneson Prods., Inc., 91 F.3d 1351 (9th Cir. 1996) (holding that a psychological condition that lasted for "less than four months" did not qualify as a disability under the ADA).  However, as detailed above, Plaintiff's conditions continued for years and were not episodic.  The cases cited by Plaintiff in his Opposition are unpersuasive because, in those cases, the plaintiffs had alleged that the impairments at issue were episodic.  See ECF No. 32 at 18-19.  In Rohr v. Crime Victims Compensation Commission of Hawaiʻi, the district court granted reconsideration of its prior order dismissing the plaintiff's ADA claim because it determined that the complaint "state[d] a plausible argument that the four-year statute of

limitations period" under Section 1658 may apply to the plaintiff's claim.  No. CV 16-00162 LEK-KSC, 2017 WL 776106, at *4 (D. Haw. Feb. 28, 2017).  The court's decision in Rohr is distinguishable because the plaintiff had expressly alleged that the individual's condition was "reoccurring or episodic in nature and can be controlled with medication."  Id.  Similarly, in Dickinson v. University of North Carolina, the plaintiff had alleged that she suffered from periodic migraine headaches and polycystic ovary syndrome, which was only occasionally symptomatic.  91 F. Supp. 3d 755, 764 (M.D.N.C. 2015).  In contrast to these cases, Plaintiff's First Amended Complaint does not allege that Plaintiff's conditions were periodic or episodic.

Second, the Court rejects Plaintiff's argument that "his depression's response to treatment [ ] would have barred him from making a claim under the original ADA."  See ECF No. 32 at 15.  As noted above, in following the Supreme Court's decision in Sutton, courts were required to consider whether corrective measures, like taking medication, would mitigate whether an individual is substantially limited in any major life activity under the ADA.  527 U.S. at 488; McAlindin v. Cty. of San Diego, 192 F.3d 1226, 1233 (9th Cir. 1999), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000).  Although the ADAAA eliminated the consideration of corrective measures, like taking medication, see 42 U.S.C. § 12102(4)(E), the fact that Plaintiff

12

was taking medication for his conditions does not necessarily mean that he was barred from making a claim under the original ADA. The Supreme Court stated in Sutton that "[t]he use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting." 527 U.S. at 488. The Ninth Circuit further recognized that "in some cases the use of medication may not eradicate the effects of illness, and a disability may remain either due to symptoms of the condition itself which persist despite the effects of medication, or as a result of the medication's side-effects." McAlindin, 192 F.3d at 1236. Accordingly, the Court must consider whether the limitations that Plaintiff faced remained despite the effects of medication. In his First Amended Complaint, Plaintiff alleges that his disability included "major depression, anxiety, lethargy, insomnia, concentration and focus problems, and undiagnosed hypothyroidism." See ECF No. 7 ¶ 72. Plaintiff further alleges that his depression and hypothyroidism interfered with major life activities such as concentrating, studying, and learning. Id. ¶ 19. Plaintiff alleges that he did not begin to respond to treatment for his depression and hypothyroidism until January 2011, after he had requested accommodations from the medical school. See ECF No. 7 ¶ 20. Even in January 2011,

13

Plaintiff alleges that his treatment was not "fully effective." Id. ¶¶ 39, 44, 53. Plaintiff alleges that in 2011 he still exhibited symptoms of depression and hypothyroidism which "affected his energy, motivation, concentration and cognitive clarity." Id. ¶ 63. Based on the allegations in Plaintiff's First Amended Complaint, even with medication, Plaintiff's depression and hypothyroidism substantially limited his concentrating, studying, and learning through 2011. See McAlindin, 192 F.3d at 1236 (holding that the plaintiff's statements that his life activities were substantially limited even with medication were sufficient to survive summary judgment). Accordingly, the Court concludes that Plaintiff could have brought his claims under the ADA and the Rehabilitation Act prior to the enactment of the ADAAA.

**B. Because Plaintiff's Claims Could Have Been Brought Under the ADA and the Rehabilitation Act, the Applicable Statute of Limitations is Hawaii Revised Statutes Section 657-7.**

Because the Court concludes that Plaintiff could have brought his claims under the ADA and the Rehabilitation Act before the passage of the ADAAA, Plaintiff's claims are governed by the applicable statute of limitations of the "most analogous state-law claim." Sharkey, 778 F.3d at 770. In Hawaii, the most analogous state law claim is a personal injury suit, which has a two-year statute of limitations. See Jefferies v. Albert, No.

CIV 09-00156 JMS/KSC, 2009 WL 4064799, at *5 (D. Haw. Nov. 24, 2009) (applying a two-year statue of limitations to the plaintiff's ADA and Rehabilitation Act claims); Haw. Rev. Stat. § 657-7. Plaintiff filed his Complaint on September 11, 2016. ECF No. 1. Therefore, the statute of limitations bars any ADA and Rehabilitation Act claims that accrued prior to September 11, 2014. Based on the allegations in Plaintiff's First Amended Complaint, all of the actions at issue occurred between 2009 and 2012. See ECF No. 7. Accordingly, all of Plaintiff's claims are time barred. Because Plaintiff's claims are time barred, Defendant is entitled to judgment on the pleadings.

**C. Plaintiff is GRANTED Leave to File a Second Amended Complaint.**

Although Rule 12(c) does not mention leave to amend, courts have discretion to grant motions for judgment on the pleadings with leave to amend. See In re Dynamic Random Access Memory (Dram) Antitrust Litig., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007); Gregg v. Hawaii, Dep't of Pub. Safety, 870 F.3d 883, 889 (9th Cir. 2017) (reversing district court's decision denying plaintiff leave to amend after granting defendant's motion for judgment on the pleadings based on statute of limitations grounds); Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010) ("leave to amend shall be freely given when justice so requires." (citing Fed. R. Civ. P. 15(a))).

Based on the arguments present by counsel at the

hearing, Plaintiff may be able to allege facts making it plausible that his condition was episodic or conditional, or that medication ameliorated his symptoms, which would require the Court to find that his claims were made possible by the ADAAA and Section 1658's four-year statute of limitations applied.  The deadline to file motions to amend the pleadings is set for March 23, 2018.  ECF No. 31.  Trial is set for October 22, 2018.  Id.  Accordingly, the Court finds that it would not be futile to allow amendment, there has been no undue delay, and the prejudice to Defendant is minimal based on the October 2018 trial date.  Plaintiff shall file an amended complaint no later than October 31, 2017.

## CONCLUSION

The Court GRANTS Defendant's Motion for Judgment on the Pleadings.  Plaintiff shall file an amended complaint no later than October 31, 2017.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, OCTOBER 23, 2017.

Richard L. Puglisi
United States Magistrate Judge

**TOMA v. UNIVERSITY OF HAWAII; CIVIL NO. 16-00499 RLP; MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**