IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN TOMA, | ) | CIVIL NO. 16-00499 RLP |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | GRANTING IN PART AND DENYING IN |
| vs. | ) | PART DEFENDANT'S MOTION TO |
| | ) | DISMISS SECOND AMENDED COMPLAINT |
| UNIVERSITY OF HAWAII, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Before the Court is Defendant's Motion to Dismiss Second Amended Complaint, filed on November 14, 2017 ("Motion"). ECF No. 38. Plaintiff's Opposition was filed on December 6, 2017; Defendant filed its Reply on December 19, 2017. ECF Nos. 41, 42, 43. Pursuant to Local Rule 7.2(d), the Court found the Motion suitable for disposition without a hearing. ECF No. 44. After carefully reviewing the parties' submissions and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART the Motion.

BACKGROUND

After the Court granted Defendant's Motion for Judgment on the Pleadings, Plaintiff filed a Second Amended Complaint. See ECF Nos. 35, 36. In his Second Amended Complaint, Plaintiff alleges that he matriculated as a medical student at the John A. Burns School of Medicine, University of Hawaii at Manoa, in July 2005. ECF No. 36 ¶ 9. Shortly after July 2005, Plaintiff began to experience episodes of anxiety, depression, and inabilities to

sleep or focus.  Id. ¶ 10.  Beginning in 2007, Plaintiff was under psychiatric care.  Id. ¶ 17.

Plaintiff was placed on academic probation on January 24, 2009, with the requirement that Plaintiff take a medical licencing exam by the end of May 2009.  Id. ¶ 23.  On July 1, 2009, Plaintiff requested a hearing before the Student Standing and Promotion Committee to request an extension of time to take the medical licencing exam to accommodate the episodes of anxiety that he was experiencing.  Id. ¶ 24.  The Student Standing and Promotion Committee directed Plaintiff to take the exam by the end of July 2009.  Id. ¶ 25.  Plaintiff took the medical licencing exam on July 27, 2009, and did not pass.  Id. ¶¶ 26, 27.  Plaintiff's failure on the exam caused a major depressive episode as diagnosed by his treating psychiatrist pursuant to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV TR) criteria for Major Depressive Episode.  Id. ¶ 28.

In October 2009, Dr. Mary Ann Antonelli, Director of the Office of Student Affairs at the medical school, asked Plaintiff to appear before the Student Standing and Promotion Committee to evaluate his academic progress.  Id. ¶ 41.  In response, Plaintiff emailed Dr. Antonelli about his depression and disability.  Id. ¶ 42.  Dr. Antonelli did not refer Plaintiff to the office for students with disabilities, but accommodated

Plaintiff by twice postponing Plaintiff's appearance before the committee.  Id. ¶¶ 44-45.

Plaintiff appeared before the Student Standing and Promotion Committee on February 10, 2010.  Id. ¶ 47.  The committee allowed Plaintiff to re-take the medical licencing exam by April 28, 2010, to accommodate his disability.  Id. ¶ 48.  Plaintiff then experienced another episode of depression.  Id. ¶ 31.  In April 2010, Plaintiff's treating psychiatrist advised Plaintiff to take a medical leave of absence from school and not to take the medical licencing exam by the April 28, 2010 deadline.  Id. ¶ 49.  Plaintiff's treating psychiatrist wrote a letter to the medical school on June 7, 2010, stating that she recommended a 4-6 month leave of absence to accommodate Plaintiff's depression.  Id. ¶ 50.  Dr. Antonelli approved Plaintiff's medical leave of absence on June 23, 2010.  Id. ¶ 51.  In the following months, Plaintiff's episode of depression continued without relief.  Id. ¶ 34.

In August 2010, Plaintiff was diagnosed with hypothyroidism and began treatment.  Id. ¶ 35.  In the following months, Plaintiff's episode of depression started to resolve.  Id. ¶ 36.  By November 2010, Plaintiff's ability to study was not substantially limited anymore, and subsequently he resumed his review for the exam.  Id.

On December 1, 2010, the new Director of the Office of

Student Affairs at the medical school, Dr. Richard Smerz, ordered Plaintiff to attend a meeting before the Student Standing and Promotion Committee to evaluate his academic progress on January 12, 2011. Id. ¶ 55. Plaintiff met with Dr. Smerz on January 5, 2011, and informed him of his medical disabilities, including depression and recently diagnosed hypothyroidism. Id. ¶ 56. Plaintiff's episodic depression and hypothyroidism had begun to respond to treatment by January 2011. Id. ¶¶ 39, 57. Plaintiff asked Dr. Smerz to continue Plaintiff's medical leave to allow time for his treatment to become fully effective, which Dr. Smerz refused. Id. ¶¶ 57, 58. Dr. Smerz encouraged Plaintiff to withdraw from medical school or face almost certain expulsion. Id. ¶ 58. Dr. Smerz also told Plaintiff that he needed to learn to cope with his problems. Id. ¶ 59. Dr. Smerz did not recommend or contact the office for students with disabilities. Id. ¶ 61. Plaintiff's treating psychiatrist also contacted Dr. Smerz to ask that Plaintiff be given continuing accommodation to allow time for his treatment to become fully effective, which Dr. Smerz refused. Id. ¶¶ 62-63.

The Student Standing and Promotion Committee met on January 12, 2011, to review Plaintiff's case and voted unanimously to dismiss Plaintiff from the medical school for academic malperformance. Id. ¶¶ 64-68.

Plaintiff appealed the committee's decision on January

4

24, 2011.  Id. ¶ 79.  Plaintiff's treating psychiatrist submitted a letter regarding Plaintiff's depression and hypothroidism stating that these conditions "affected his energy, motivation, concentration and cognitive clarity."  Id. ¶ 81.  Plaintiff's appeal was dismissed on February 18, 2011, concluding that there were no grounds for a formal hearing.  Id. ¶ 82.

On March 1, 2011, Plaintiff appealed the decision to Dr. Jerris Hedges, Office of the Dean of Medicine, asking permission to re-take the licencing exam as an accommodation for his depression and hypothyroidism.  Id. ¶¶ 87-93.  Plaintiff met with Dr. Hedges regarding his appeal on April 6, 2011.  Id. ¶ 94.  Plaintiff received a letter from Dr. Hedges on April 7, 2011, upholding the decision to dismiss Plaintiff from the medical school.  Id. ¶ 95.

In December 2011, Plaintiff filed discrimination complaints against Dr. Hedges and Dr. Smerz with the Office of the Vice Chancellor for Students.  Id. ¶ 122.  A fact-finding report prepared by an investigation team regarding Plaintiff's complaints was submitted to the Office of the Vice Chancellor for Students on May 21, 2012.  Id. ¶ 123.  As part of that investigation, the team interviewed the Director of the University of Hawaii's Kokua Program, which is the office for students with disabilities.  Id. ¶¶ 124, 44.  On June 20, 2012, Reed Dasenbrock, Vice Chancellor for Academic Affairs, issued his

decision finding no discrimination by Dr. Hedges and Dr. Smerz. Id. ¶¶ 130-142.

On July 21, 2012, Plaintiff appealed the decision finding no discrimination by Dr. Hedges and Dr. Smerz to Vassilis Syrmos, Associate Vice Chancellor for Research and Graduate Education, acting as the Chancellor's designee. Id. ¶ 149. Plaintiff's appeal regarding the decision finding no discrimination by Dr. Hedges and Dr. Smerz was denied on September 11, 2012. Id. ¶ 154.

Plaintiff filed this action four years later on September 11, 2016. See ECF No. 1. Plaintiff asserts claims under Section 504 of the Rehabilitation Act of 1973, as amended, and under Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended. ECF No. 36 ¶¶ 166-173. In his Second Amended Complaint, Plaintiff alleges that Defendant "created a hostile environment" in violation of the ADA and the Rehabilitation Act. Id. ¶¶ 163-165, 170, 173.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is generally limited to the contents of the complaint. Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). Plaintiff's allegations of material fact are

taken as true and construed in the light most favorable to Plaintiff.  Id.  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citation omitted).

Here, Defendant asks the Court to dismiss Plaintiff's Second Amended Complaint because all of Plaintiff's claims are time-barred by the statute of limitations.  ECF No. 38.  "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint."  Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation and citation omitted).

**I. Plaintiff's Claims are Subject to the Four-Year Statute of Limitations in 28 U.S.C. § 1658.**

As an initial matter, the Court must determine the applicable statute of limitations for Plaintiff's Rehabilitation Act and ADA claims.  As detailed in the Court's prior Memorandum Opinion and Order Granting Defendant's Motion for Judgment on the

Pleadings with Leave to Amend, see ECF No. 35, like many federal statutes, neither the Rehabilitation Act nor the ADA contains an express statute of limitations. See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 869 (9th Cir. 2014); Sharkey v. O'Neal, 778 F.3d 767, 770 (9th Cir. 2015). Before 1990, federal courts generally borrowed the statute of limitations provided by the analogous state law. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78 (2004). However, in 1990, Congress passed 28 U.S.C. § 1658, which provides a "catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." Id. at 371; Sharkey, 778 F.3d at 770; 28 U.S.C. § 1658. Although both the Rehabilitation Act and the ADA were enacted before this date, the Supreme Court has held that Section 1658's statute of limitations also applies to claims brought under amendments to existing statutes if "the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Id. at 382; Sharkey, 778 F.3d at 770. The ADA and the Rehabilitation Act were amended by the ADA Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009. Accordingly, to determine the appropriate statute of limitations period, the Court must consider whether Plaintiff's claims were "made possible" by the ADAAA. See Jones, 541 U.S. at 382.

In order to establish a violation of Title II of the

ADA, a plaintiff must show that: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)). To establish a claim under Section 504 of the Rehabilitation Act, a plaintiff must establish the same elements as above and must also show that "the program receives federal financial assistance." Id. (quoting Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001)).

The element at issue is whether Plaintiff qualifies as an individual with a disability. Under the ADA, a disability was defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." ADA § 3(2)(A). The ADA did not define "physical or mental impairment," "substantially limits," or "major life activities." See id. In two key cases, the Supreme Court provided guidance regarding how to interpret these terms. In Sutton v. United Air Lines, Inc., the Supreme Court held that "a

9

person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." 527 U.S. 471, 483 (1999). In Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, the Supreme Court held that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." 534 U.S. 184, 198 (2002).

Congress expressly rejected these two cases in passing the ADAAA and revised the definition of "disability" for both the ADA and the Rehabilitation Act. See 42 U.S.C. § 12101(a)(4)-(7); 42 U.S.C. § 12102(4). Specifically, the ADAAA provides that "[a]n impairment that is episodic . . . is a disability if it would substantially limit a major life activity when active," and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(D), (E)(i)(I).

Here, accepting the allegations of the Second Amended Complaint as true, the Court finds that Plaintiff's claims were only made possible by the ADAAA. Specifically, Plaintiff alleges that his anxiety and depression were episodic in nature and that

his depression, anxiety, and hypothyroidism responded to treatment with medication.  See ECF No. 36 ¶¶ 10, 25, 29, 31, 38, 39, 57.  Based on these allegations, the Court finds that Plaintiff's claims were "made possible" by the ADAAA because he would not have been able to allege that he qualified as an individual with a disability under the ADA.

The Court rejects Defendant's arguments that Hawaii's two-year statute of limitations applies to Plaintiff's claim based on the denial of Plaintiff's appeal to Vassilis Syrmos because that claim is not "dependent" on the episodic nature of Plaintiff's disability or the ameliorative effects of medication. See ECF No. 38-1 at 13-14.  All of Plaintiff's claims are dependent on him establishing that he qualifies as a person with a disability.  Based on Plaintiff's allegations regarding the episodic nature of his depression and his response to medication for his hypothyroidism, Plaintiff's claims "necessarily depend" on the amendments enacted by the ADAAA.  See Jones, 541 U.S. at 384.  Accordingly, all of Plaintiff's claims are subject to the four-year catchall statute of limitations set forth in 28 U.S.C. § 1658.

Plaintiff filed his Complaint on September 11, 2016. ECF No. 1.  As detailed in the recitation of facts above, only one act alleged in Plaintiff's Second Amended Complaint occurred within four years of Plaintiff filing his original Complaint:

11

the decision by Vassilis Syrmos, Associate Vice Chancellor for Research and Graduate Education, which was issued on September 11, 2012. ECF No. 36 ¶ 154. All other acts alleged in Plaintiff's Second Amended Complaint occurred more than four years prior to the filing of Plaintiff's original Complaint. Id.

In the present Motion, Defendant argues that all of Plaintiff's claims regarding acts that occurred prior to September 11, 2012, are time-barred. ECF No. 38. In his Opposition, Plaintiff does not specifically address the statute of limitations arguments raised in Defendant's Motion. See ECF No. 42-1. Rather, Plaintiff's Opposition details the alleged facts and then summarily concludes that there are sufficient allegations of "direct discrimination, systemic discrimination, and a hostile educational environment to be put to a finder of fact." See id. at 23.

Claims of direct discrimination, without more, that occurred prior to September 11, 2012, would be time-barred by Section 1658's four-year statute of limitations. In order for Plaintiff's claims regarding discriminatory acts that occurred prior to September 11, 2012, to survive, Plaintiff must allege a theory of discrimination under the ADA and the Rehabilitation Act that allows the court to consider acts that occurred outside of the statutory period. Here, Plaintiff argues that he has alleged a hostile education environment claim and a systemic violation,

12

which allow the acts that occurred outside of the statutory period to be considered. As discussed below, the Court finds that all of Plaintiff's claims based on acts that occurred prior to September 11, 2012, are time barred.

**II. The Court Declines to Recognize a Hostile Education Environment Claim.**

The parties dispute whether the Ninth Circuit recognizes a hostile learning environment claim under the Title II of the ADA or the Rehabilitation Act. In addressing hostile environment claims in the *employment* context, the Supreme Court explained that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" National R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 117 (2002). For statute of limitation purposes, if an act contributing to the hostile work environment claim falls within the statutory period, the entire duration of the hostile environment claim can be considered because all of the acts are part of the single claim. Id. at 117-18. Whether such a claim is recognized in the Ninth Circuit in the educational context is critical to determining whether Plaintiff's claims are time-barred. If the Court recognizes a hostile educational environment claim, all of the acts alleged in the Second Amended Complaint would be timely because the last act alleged, which occurred on September 11, 2012, falls within the

13

statutory period.

Defendant argues that Plaintiff's claims regarding discriminatory acts that occurred prior to September 11, 2012, are time-barred because the Ninth Circuit does not recognize a hostile educational environment claim under the ADA or the Rehabilitation Act. ECF No. 38-1 at 8. Plaintiff argues in a footnote that "[h]ostile educational environment claims have been upheld in multiple jurisdictions." ECF No. 42-1 at 3 n.5. In support of that argument, Plaintiff cites two cases: a 1997 district court case from the District of Massachusetts; and a 2006 Eighth Circuit case. Id. (citing Guckenberger v. Boston Univ., 957 F. Supp. 306 (D. Mass. 1997); M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Praque, Minn., 439 F.3d 865 (8th Cir. 2006)).

In Guckenberger v. Boston University, the district court found that a hostile learning environment claim did exist under the ADA and the Rehabilitation Act. 957 F. Supp. 306, 313 (D. Mass. 1997). The court reasoned that "[b]oth statutes apply to discrimination by educational facilities in receipt of federal funds, and neither limits its prohibitions to discrimination in the employment context." Id. Further, the court stated that the statutory language of the ADA and the Rehabilitation Act "is substantially similar to Title IX of the Education Amendments of 1972, which courts have held is the statutory basis for hostile

learning environment claims based on sexual harassment." Id. The court concluded that "there is a cause of action under the ADA and the Rehabilitation Act for a hostile learning environment when harassment based on a student's disability has the purpose of unreasonably interfering with the individual's performance or of creating an intimidating, hostile, or offensive environment." Id. at 314 (internal quotation and modifications omitted).

In M.P. ex rel. K. & D.P. v. Independent School District. No. 721, New Prague, Minnesota, the Eighth Circuit listed "failed to investigate allegations of disability discrimination, student-against-student harassment, hostile education environment, and disclosure of personal information" as one of three claims asserted by the plaintiff against the defendant. 439 F.3d at 868. The Eighth Circuit did not discuss the merits of the plaintiff's claims or provide any further discussion. Id. Instead, the court concluded that the plaintiff could pursue his claims under the Rehabilitations Act without having to first exhaust his administrative remedies under the Individuals with Disabilities Education Act because his claims were unrelated to the Individualized Education Program administrative process. Id.

After examining the authorities cited by Plaintiff, the Court declines to recognize a hostile educational environment claim. Plaintiff's citation to the Eighth Circuit's decision in M.P. is unpersuasive. As discussed above, the Eighth Circuit's

15

decision does not contain any discussion of a hostile educational environment claim. Further, although the district court in Guckenberger conducted a thoughtful statutory analysis, it appears to be an outlier. Plaintiff does not cite and the Court has not been able to find any decision within the Ninth Circuit that recognizes a hostile educational environment claim under Title II of the ADA[1] or the Rehabilitation Act. Other district courts within the Ninth Circuit have examined Guckenberger, but none have recognized a hostile learning environment claim. See Garedakis v. Brentwood Union Sch. Dist., 183 F. Supp. 3d 1032, 1046 (N.D. Cal. 2016) ("This court was unable to locate any decision by the Ninth Circuit or by any district court within the Ninth Circuit recognizing a claim of hostile educational environment under the ADA or § 504, against a school board, and this court declines to do so."); Wormuth v. Lammersville Union Sch. Dist., No. 215CV01572KJMEFB, 2017 WL 6344453, at *12 (E.D. Cal. Dec. 12, 2017) ("The court is unaware of any court within the Ninth Circuit recognizing such a [hostile education] claim under the ADA or § 504 and so declines to recognize such a claim

---

[1] As noted by Defendant, the Ninth Circuit has expressly considered whether a hostile work environment claim exists under Title I of the ADA, which applies to employment, and has stated that it "has not yet held that such a claim exists, let alone what its source in the statute might be." See Brown v. City of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003); but see Meirhofer v. Smith's Food & Drug Ctrs., Inc., 415 Fed. Appx. 806, 807 (9th Cir. 2011) (stating that "assuming arguendo, that hostile work environment claims are cognizable under the ADA," the facts of the case did not state such a claim).

here."); see also Ticer v. Young, No. 16-CV-02198-KAW, 2016 WL 4719272, at *7 (N.D. Cal. Sept. 9, 2016) (stating that although the reasoning of Guckenberger was "persuasive," the theory was not applicable based on the facts of the case). Based on the lack of controlling authority recognizing such a claim in the Ninth Circuit, the Court declines to recognize a claim for hostile educational environment in this case.

**III. Plaintiff Fails to Allege Systemic Policy or Practice of Discrimination.**

Discrete discriminatory acts are only actionable when the acts occur within the limitations period "even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "The continuing violations doctrine extends the accrual of a claim if a *continuing system of discrimination* violates an individual's rights up to a point in time that falls within the applicable limitations period." Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 822 (9th Cir. 2001) (emphasis added). The continuing violations doctrine applies if the plaintiff alleges "a systematic policy or practice of discrimination that operated, in part, within the limitations period." Id. "A systemic violation claim requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies." Id.; see also Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) ("The doctrine applies where there is no single incident

17

that can fairly or realistically be identified as the cause of significant harm.").

Here, Plaintiff has not alleged a systemic policy or practice. See ECF No. 36. Plaintiff does not allege that Defendant had a general discriminatory policy or maintained a discriminatory practice against disabled individuals. Instead, as detailed above, Plaintiff alleges that Defendant engaged in a series of related discrete acts against him, only one of which falls within the four-year statute of limitations. Id. The Supreme Court has expressly rejected this "serial violation" theory: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. Other courts have rejected attempts by plaintiffs to recharacterize their serial violations into systemic violations to avoid statute of limitation issues. See, e.g., Brown v. Napa Valley Unified Sch. Dist., No. 3:11-CV-05673-JCS, 2012 WL 4364673, at *7-*8 (N.D. Cal. Sept. 24, 2012) (rejecting the plaintiffs' "attempt to frame their claim in terms of Defendants' 'general practices or policies,'" in order to "subvert the statute of limitations"). Because Plaintiff has not alleged a systemic policy or practice, the continuing violations doctrine does not apply.

Accordingly, Plaintiff's claims of discrimination based

18

on acts that occurred prior to September 11, 2012, are time-barred by Section 1658's four-year statute of limitations. Because those claims are time barred, Defendant's Motion is GRANTED as to all claims of discrimination based on acts that occurred prior to September 11, 2012; Defendant's Motion is DENIED as to Plaintiff's claims of discrimination based on acts that occurred after September 11, 2012.

CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss Second Amended Complaint as follows:

1. The Court declines to recognize a claim for hostile education environment.

2. Plaintiff's claims based on acts that occurred prior to September 11, 2012, are time barred and DISMISSED WITH PREJUDICE.

3. Plaintiff's claims based on acts that occurred on or after September 11, 2012, are not time barred and remain pending.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, JANUARY 16, 2018.

Richard L. Puglisi
United States Magistrate Judge

**TOMA v. UNIVERSITY OF HAWAII; CIVIL NO. 16-00499 RLP; MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**