UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN TOMA, | ) | Case No. CV16-00499RLP |
| Plaintiff, | ) | July 18, 2018 |
| | ) | 9:57 a.m. |
| vs. | ) | |
| UNIVERSITY OF HAWAII, | ) | U.S. District Court |
| Defendant. | ) | 300 Ala Moana Boulevard |
| | ) | Honolulu, HI 96850 |

TRANSCRIPT OF HEARING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
BEFORE THE HONORABLE RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: BRIAN K. MACKINTOSH, ESQ.
841 Bishop Street, Suite 2201
Honolulu, HI 96813

For Defendant: OFFICE OF GENERAL COUNSEL
UNIVERSITY OF HAWAII
2444 Dole Street
Bachman Hall 110
Honolulu, HI 96822

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Maukele Transcribers LLC
Jessica B. Cahill, CER/CET-708
P.O. Box 1652
Wailuku, Maui, Hawaii 96793
Telephone: (808)244-0776

JULY 18, 2018 9:57 A.M.

THE CLERK: All rise. The United States District Court for the District of Hawaii is now in session. The Honorable Richard Puglisi presiding.

THE COURT: Please be seated.

THE CLERK: Civil 16-00499RLP, John Toma v. The University of Hawaii. This case is called for a hearing on Defendant's motion for summary judgment. Appearances, please, counsel, for the record.

MR. MAYESHIRO: Good morning, Your Honor. Derek Mayeshiro on behalf of the University of Hawaii.

THE COURT: Good morning, Mr. Mayeshiro.

MR. MACKINTOSH: Brian Mackintosh on behalf of Plaintiff John Toma, who is in the audience.

THE COURT: Good morning, Mr. Mackintosh. All right. Mr. Mayeshiro, this is your motion.

MR. MAYESHIRO: Yes, Your Honor. Thank you. As the Court may recall, most of Plaintiff's prior claims were earlier dismissed in this case as being untimely. The Court applied a four year statute of limitations that essentially wiped out most of Plaintiff's claims, including any claims regarding his academic dismissal, which occurred on January 14th, 2011, and his subsequent academic internal appeals at the University, which occurred in the spring of 2011.

So, any claim that the Plaintiff had prior to September

11, 2012, are forever barred. So, then that begs the question, well, what's left. As pled, Plaintiff's claims are somewhat amorphous, but he does use the words "hostile education environment" in pleading his ADA claim, and his §504 claim. But the Court has previously ruled that because of Ninth Circuit precedent, the Court declined to recognize any type of hostile education environment claim, so those were dismissed.

Assuming that Plaintiff's remaining claim falls within, as pled, the hostile education environment, then the law of the case should apply to those claims -- remaining claims, and they should be dismissed as well. If, Plaintiff --

THE COURT: Mr. Mayeshiro --

MR. MAYESHIRO: Yes.

THE COURT: -- I think your law of the case argument is, I think, generally well taken, it's just that the -- you focus specifically and exclusively, I think, on Count 1 and Count 2, and how they're worded, and they clearly do reference a hostile environment. But if you look at the -- the complaint is a very detailed one, right?

MR. MAYESHIRO: Yes, Your Honor.

THE COURT: It's an extremely detailed complaint, perhaps more detailed than we normally see. And when you focus on the time frame that is set forth in the complaint, given the -- our liberal pleading standards in federal court, I think he clearly makes out a claim that he was discriminated against

because of his disability through the acts of -- I believe it's Dr. Syrmos.

MR. MAYESHIRO: Yes, Your Honor.

THE COURT: Because that's the only fact in the complaint that would come on or after September 11th, 2012.

MR. MAYESHIRO: Yes, Your Honor. And to that point, Plaintiff continues to assert that the relevant program that the government entity here, the University, was providing, and he should have been able to participate in is the medical school, is JABSOM.

THE COURT: Right.

MR. MAYESHIRO: Under the ADA, it states: No qualified individual with a disability, and by reason of that disability, shall be excluded from participation in that government program. Plaintiff continues to assert JABSOM is the program at issue here. So, to that end, a qualified individual, as defined by the ADA, is someone who, with a disability, who meets the essential eligibility requirements.

But here, Plaintiff was dismissed beyond the statute -- applicable statute of limitations. So, those claims are already gone. Plaintiff essentially tries to tie Dr. Syrmos' academic appeal in September 11, 2011 or '12, I believe.

THE COURT: '12.

MR. MAYESHIRO: '12. And, essentially, tries to tie that back in to the government program, which is the medical

school. However, that was a separate internal policy -- alleged policy violation that had begun after his academic appeals were already concluded.

So, because of his academic dismissal and because of the academic appeals, now all fall outside of the statute of limitations. The argument, therefore, is he cannot try to resurrect those claims by alleging a policy violation and tie back in the Medical School Program.

The University has set forth, in rather meticulous detail, the basis of his academic dismissal, if the Court had any concerns on that basis. But even assuming that Plaintiff alleges some type of specific discrimination in the appeals process of that separate internal UH policy, then that would arguably fall within the state two year statute of limitations.

The ADA does provide that, essentially, no disabled person shall be discriminated against by any such public entity. And if that's the provision under the ADA that we're going after, that provision was already there in the original ADA.

If the Court may recall, back in the prior motions to dismiss, the prior motions -- I believe it was motions for judgment on the pleadings. In those prior motions, Plaintiff basically alleged, well the episodic nature of his depression and the ameliorative affects of medication, still qualifies him as someone with a disability and, therefore, reasonable accommodations should have been met or should have been provided

to him. That was with respect to the medical school.

Plaintiff now alleges, in this separate internal UH policy investigation, and decision, and appeal that he was otherwise discriminated against, but in that arena, he has made no allegation that he was entitled to some type of accommodation. The accommodation that Plaintiff continues to assert is for his enrollment and his stay while participating at the medical school. In essence, he's arguing that he should have had more time to take the USMLE Step 1 Test, although he almost had two years to take that test, which we've outlined in our motion.

But when it comes to the remaining claim, if we are only talking about that former Vice Chancellor Syrmos discriminated against the Plaintiff, then that should have fallen in the two year statute of limitations, which is why it's a little amorphous the way the allegations are pled, albeit they are specific as far as dates, and times, and alleged specific acts.

But to the extent that the Plaintiff is continuing to argue accommodation for a particular program, there is no doubt that that program is the medical school and all of those claims regarding his academic dismissal fall outside the statute of limitations.

So, to the extent that Plaintiff is using this policy discrimination as a vehicle to resurrect his dismissal, then those claims should be dismissed, and we outlined -- because he

essentially does not meet the essential eligibility requirements, because he was previously dismissed and any claims and rights he had regarding that dismissal and his academic appeal fall beyond the statute of limitations.

So, I believe, that is Plaintiff's remaining argument, because he continues to assert reasonable accommodation at JABSOM. If Plaintiff had alleged he needed some type of accommodation, although I don't know what it would be, with respect to his appeal in the policy investigation, in the policy decision, and its ultimate academic -- or its ultimate appeal, then that might be a different story, Your Honor. But here, the program at question under the ADA is the medical school.

So, if Plaintiff's claim is something other than a request for accommodation at the medical school, then it must be a straight discrimination complaint under the ADA against former Vice Chancellor Syrmos, in which case that would fall under the two year statute of limitations, not the four year.

The alleged episodic nature and the ameliorative effects of medication that extended or that was in the amendments to the ADA, and thereby allowed Plaintiff to access the statute of limitations under 16 U.S.C. -- no, 28 U.S.C. 1658, those amendments dealt specifically with expanding the definition of disability to allow the government and the individual to have more accommodations provided.

In other words, if an individual had an episodic nature

of a condition, or if the individual has some type of disability, which was otherwise lessened by the effects of medication, he should still -- he or she should still be qualified as a disabled person under the ADA, and the government should still allow or provide reasonable accommodations in that context.

But here, if the remaining complaint is a straight discrimination complaint against the former Vice Chancellor, then that could have been brought under the original ADA, in which the State Court -- I'm sorry, the state statute of limitations of two years under H.R.S. 657-7, should apply given the Court's prior ruling.

THE COURT: All right. Thank you, Mr. Mayeshiro.

MR. MAYESHIRO: Thank you, Your Honor.

THE COURT: Mr. Mackintosh.

MR. MACKINTOSH: Good morning, Judge Puglisi.

THE COURT: Good morning.

MR. MACKINTOSH: I generally want to object because most of what Mr. Mayeshiro just went into was unargued and unbriefed. There wasn't an argument for a different statute of limitations, there wasn't a different claim that a two year ADA statute of limitation under the state should apply. And even if it had been briefed, my response, I think, would be the same. It doesn't make any sense.

The ADA Amendments Act, which the Plaintiff is bringing this case under expanded it to allow for episodic mental

disabilities, which the Plaintiff had. That episodic -- that expanded definition of disability wasn't there prior to that. Judge Dean Syrmos could not have relied on it or the earlier ADA. And so, anyway, I don't understand why someone with an episodic disability, being reviewed by Syrmos, would have a two year rather than a four year statute of limitations.

Secondly, Dean Syrmos was the ultimate fact finder. The dismissal was not final until the appeals were exhausted. Judge (sic) Syrmos had the discretion to review all of the facts. Not only did he have the discretion, he had the obligation to inform himself, under the law, of the facts of John Toma's case.

So, Wong v. Regents of the University of California, has two obligations that it imposes on a university. One is that it has to explore the alternatives with a student that is available to it. And one of those alternatives, would have been to repeat the first two years. If they were worried that his academic expertise or -- his academic knowledge wasn't fresh enough, they could have offered him to repeat that.

And, in fact, that has happened in Garcia v. State University of New York Health Sciences Center at Brooklyn, 280 F.3d. 98. It was a very similar fact pattern. There was a mentally disabled person who, because of depression, wasn't able to complete his first two years and the State University of New York at Buffalo offered him to repeat those two, so that he would be fresh.

That was an alternative available to UH. They never explored that alternative with him and that failure to explore the alternatives means they don't reach the threshold of having met the requirements of the ADA.

Secondly, Dean Syrmos was required to inform himself of the facts of the case, which he did not, because he dismisses and says, it seems like you sporadically contacted Dean Antonelli, but you never really gave her letters from your doctor, but in fact he had given letters. He had put them on notice, he had documented his disability, and Dean Syrmos ignores that.

And, moreover, Dean Syrmos ignores the internally generated fact finder's report that University of Hawaii constructed and provided that found that John Toma likely had a disability and that disability could have been accommodated by providing an additional leave of absence. That accommodation was not provided and should have been. And that was from the Kokua Program, who was in charge of interpreting the ADA for the University of Hawaii.

The facts demonstrate that Dean Syrmos had the discretion and capacity to offer those accommodations. He should have, if he had done an adequate investigation of the facts and informed himself of the law. That was not done and because of that -- because of his failure to, on September 11, 2012, to inform himself of what was required John Toma, the Plaintiff, was discriminated.

THE COURT: Mr. Mackintosh --

MR. MACKINTOSH: Yes.

THE COURT: -- as far as the -- given the Court's prior ruling on the statute of limitations, the only specific claim of discrimination then would be that of the denial of your client's appeal of the finding of no discrimination by Drs. Hedges and Smerz.

MR. MACKINTOSH: That's the only thing alleged in the complaint. As I go through this voluminous record, I find all these emails from -- between Toma and Reed Dasenbrock, where Toma is requesting the fact finder's report and Dasenbrock refuses to provide it, refuses after three separate requests. For a period of weeks, Dasenbrock doesn't provide it to him and on the day that Toma's appeal is due, after -- hours after -- literally, like two hours after the time-stamps on the emails, then Dasenbrock provides the fact finder's report that justified Toma's appeal and would have provided additional facts.

I would ask the Court for leave to amend the second amended complaint to include that. It was in documents that I had, but it's just thousands of pages of documents, and I didn't see it until preparing for this motion.

THE COURT: Okay. But all of those specific complaints of not being provided the fact finder's report or your allegations that perhaps the report was concealed at some point, all of that came before the statute of limitations would have

run.

MR. MACKINTOSH: No, he was finally provided it on September 11 of 2012.

THE COURT: But the complaint is that wasn't provided beforehand would --

MR. MACKINTOSH: That's correct --

THE COURT: -- would be --

MR. MACKINTOSH: -- but the effect of concealing it until after the appeal was due, it only came to fruition and the effects were only felt on September 11th, when the denial came through.

THE COURT: Okay.

MR. MACKINTOSH: Yeah.

THE COURT: All right. Mr. Mayeshiro, anything further?

MR. MAYESHIRO: Yes, Your Honor, just briefly. With respect to the two year, versus the four year statute of limitations that I addressed, it was only in reference to the Court's inquiry. I believe, given the Court's prior ruling, and given the wording of the complaint, his remaining claim must still be trying to link Dr. Syrmos' academic appeals decision to participation at JABSOM.

And I would again submit that those claims had essentially been time barred because of the four year statute of limitations that was previously applied. Under the ADA, he must

be eligible or meet the essential eligibility requirements. And at the time Dr. Syrmos made his decision, he had previously been dismissed from JABSOM. And I do contest that if there is anything in the record that would suggest that Dr. Syrmos could have -- in a separate policy investigation, could have gone back to overrule the academic appeals decision regarding the dismissal, I don't believe there's anything in evidence regarding that particular claim. And without that tether, the claim should not survive.

With respect to any new claims that the Plaintiff wasn't provided the fact finder's report, that's something that the Plaintiff knew all along. They had more than ample opportunity to put that into the original complaint. We are now on our second amended complaint, and it's untimely to allege now that there's this new claim. And as the Court had suggested, because the denials actually still occurred before or beyond the four year statute of limitations, then those claims would be barred for that reason as well.

I think Plaintiff still has not established that particular tether between the program at JABSOM and Dr. Syrmos' decision. And any -- with respect -- I'm sorry. Just with respect to the two year and the four year statute of limitations, the four year statute of limitations only becomes effective under the amendments to the ADA, which in this case was specific to episodic depression and the ameliorative effects of medication.

To the extent Plaintiff tries to carve out some new claim, then I would argue that the two year statute of limitations should apply because any direct claim of discrimination by Dr. Syrmos could have been filed under the original ADA, as drafted. Thank you, Your Honor.

THE COURT: Okay. Thank you both. I appreciate that. Are you folks still set for a settlement conference with Judge Kurren the first week of August?

MR. MACKINTOSH: We are, Your Honor.

MR. MAYESHIRO: Yes, Your Honor.

THE COURT: Okay. All right. I'll give you all a chance to discuss matters with Judge Kurren and if that is unsuccessful in settling the case, then we'll issue a ruling shortly after that.

MR. MACKINTOSH: Could I just add, we did have a settlement conference, but it -- prior to this, and Judge Kurren postponed and offered a second settlement conference pending your ruling, because I think without a ruling on the MSJ, there's not a lot of flexibility on either of our positions.

THE COURT: All right. So, he -- are you telling me that he wanted a ruling before the settlement conference?

MR. MACKINTOSH: He thought it would be untimely, yeah.

MR. MAYESHIRO: That's my understanding as well, Your Honor.

THE COURT: Okay.

MR. MAYESHIRO: In addition, I'm sorry, Your Honor, on a sort of separate matter, counsel and I have spoken regarding the trial date continuance. The primary, I guess, remaining witness in this case, Dr. Syrmos, underwent a quadruple bypass and was unavailable for not just participation in this motion, which is why he was not referenced, but also any kind of deposition or discovery that the Plaintiff was seeking. So, because of his ailment, it did set back discovery.

THE COURT: Okay. Well, let's get through this part of the case first, and then, you know, I can address any extension at a later point.

MR. MAYESHIRO: Yes, Your Honor.

MR. MACKINTOSH: Thank you, Your Honor.

THE COURT: All right. Thank you all. Court's in recess.

THE CLERK: All rise. This Court's in recess.

(Proceedings concluded at 10:19 a.m.)

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: September 24, 2018

Jessica B. Cahill, CER/CET-708